**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

FORREST FORBES,

Plaintiff,

v.

Case No. 3:26-cv-00317-TJC-LLL

YOUNGQUIST BROTHERS, LLC, and
SHANE OLSEN, individually,

Defendants.

---

**ORDER**

**THIS CASE** is before the Court on separate motions to dismiss from defendants. Docs. 12, 15. Plaintiff, Forrest Forbes, is suing his former employer, Youngquist Brothers, LLC, and a supervisor, Shane Olsen. Forbes alleges Youngquist violated the Florida Civil Rights Act ("FCRA") and Title VII of the Civil Rights Act of 1964 ("Title VII") based on discrimination, a hostile work environment, and retaliation during his employment (Counts I–VIII).[1] Forbes alleges Olsen is liable for battery (Count IX) and Youngquist is vicariously liable for the battery (Count X). Youngquist moves to dismiss all claims against it and Olsen moves to dismiss or strike the request for attorney's fees in Count IX.

---

[1] Because the FCRA was patterned after Title VII, decisions regarding Title VII are applicable to FCRA claims. Harper v. Blockbuster Ent. Corp., 139 F.3d 1385, 1387 (11th Cir. 1998).

## I. BACKGROUND[2]

In November 2024, Youngquist hired Forbes as a derrick hand. Doc. 1 ¶ 11. The next month, Forbes was assigned to a site in Naples, Florida, where Olsen was the superintendent. Id. ¶ 14. Although Forbes is heterosexual, Olsen told coworkers he thought Forbes was gay and called Forbes homophobic slurs. Id. ¶¶ 10, 13, 14. When Forbes asked Olsen why he was spreading rumors, Olsen became "extremely confrontational." Id. ¶ 15. Later, Olsen threatened and insulted Forbes. Id. ¶ 16. The same month, Forbes reported Olsen's conduct to Tim Mitchell, in Human Resources ("HR"). Id. ¶17. Mitchell told Forbes he and Olsen would be separated. Id. ¶ 18.

To separate Forbes and Olsen, Youngquist reassigned Forbes to a Jacksonville, Florida project, in April 2025. Id. ¶ 19. Shortly thereafter, the Jacksonville superintendent recommended Forbes be promoted to driller, Mitchell agreed, and Forbes was promoted. Id. ¶¶ 20–21. Olsen and a new superintendent also were transferred to the Jacksonville job site in late April. Id. ¶ 22. Forbes informed the new superintendent about Olsen's behavior in Naples. Id. ¶ 23. Within days, the new superintendent told Forbes he needed more training for his promotion. Id. ¶ 24; Doc. 13 at 7.

---

[2] The Court accepts well-pleaded allegations as true and views them in the light most favorable to Forbes. Hunt v. Amico Props., L.P., 814 F.3d 1213, 1218 n.2 (11th Cir. 2016).

Once Olsen was in Jacksonville, he continued calling Forbes homophobic slurs and insulting Forbes. Id. ¶ 25–26. Forbes complained to the new superintendent. Id. ¶27. The new superintendent told Forbes to stay away from Olsen, without investigation or disciplining Olsen, and recommended Forbes move to a different job site because Forbes complained. See id. ¶¶ 27–28.

Less than a month after arriving in Jacksonville, Olsen tackled and punched Forbes. Id. ¶¶ 22, 29–32. Forbes sent Mitchell a copy of the police report. Id. ¶ 35. The next day, Forbes attempted to contact the new superintendent, who then terminated Forbes via text message. Id. ¶¶ 37–38.

## II. ANALYSIS

### A. Standard

A complaint must state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating a motion to dismiss, the Court will assume any non-conclusory factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). All factual inferences are made in favor of the plaintiff. Levine v. World Fin. Network Nat'l Bank, 43 F.3d 1118, 1120 (11th Cir. 2006) (citations omitted).

### B. Hostile Work Environment (Counts I and V)

For his hostile work environment claims, Forbes must plead he was subjected to unwelcome harassment based on a protected characteristic, the harassment was severe or pervasive enough to alter the terms and conditions of employment and

create a hostile or abusive working environment, and the employer is responsible, based on either vicarious or direct liability.[3] See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). The Court addresses the two challenged elements: whether Forbes sufficiently pled Olsen's conduct was "severe or pervasive" and whether any conduct was "because of" sex. Doc. 12 at 10.

The employee must have found the harassment severe or pervasive enough to alter their terms and conditions of employment, and this perception must be objectively reasonable. Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (1999) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1986)). The Court considers four factors to assess whether alleged harassment objectively altered terms or conditions of employment: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id. (citation omitted). Forbes alleges that Olsen threatened him, repeatedly berated him, yelled homophobic slurs at him, spread rumors about his sexual orientation, and ultimately battered him. He also alleges Olsen's conduct was "because of" sex.

---

[3] Sexual orientation is a protected characteristic. Bostock v. Clayton Cnty., 590 U.S. 644, 660–661 (2020). Employers must not "discriminate against any individual with respect to his . . . terms, conditions, or privileges of employment because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).

Drawing all inferences in favor of the plaintiff, Forbes has sufficiently stated a claim for a hostile work environment. Youngquist's motion to dismiss is due to be denied as to Counts I and V.

**C. Discrimination (Counts II and VI)**

An employer must not "discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). For his discrimination claims, Forbes must plausibly plead he suffered an adverse employment action due to a protected characteristic. Forbes argues his termination and the alleged demotion were adverse actions based on his perceived sexual orientation.[4] Doc. 1 ¶¶ 58–59. Youngquist argues Forbes has not met his burden to plead its "decision to terminate his employment or the retraction of alleged promotion to a driller position" were related to a protected characteristic. Doc. 12 at 11.

Termination is an adverse employment action, and a demotion (if it occurred) is likely an adverse employment action. The problem is whether Forbes adequately

---

[4] The complaint's factual allegations do not mention a demotion, only that Forbes was told he "would need training to be a Driller even though HR had already promoted" him. Doc. 1 ¶24. In his discrimination and retaliation claims, Forbes labels this a demotion. Id. ¶¶ 58, 77, 99, 116. To the extent Fores wants to rely on the alleged demotion to support any claim, an amended complaint should include factual allegations to support a demotion. With or without the alleged demotion, the Court's analysis and conclusions here would be the same.

alleges those actions were due to his sex or perceived sexual orientation. The complaint's allegations that the demotion and termination "were because of his sex and perceived sexual orientation," are legal conclusions. See id. ¶¶ 57–59. Forbes argues the demotion and termination are discriminatory because they occurred after he complained about Olsen (first about harassment, then about the assault). The focus on timeline—an adverse action shortly after a complaint—provides support for his retaliation claims, not his discrimination claims.

Forbes argues the allegations support a "cat's paw" theory of liability, when a biased non-decisionmaker exerts undue influence over a neutral decisionmaker, essentially tainting the decision. See Staub v. Proctor Hosp., 562 U.S. 411, 415–16 n.1, 423 (2011) (reversing judgment for the employer and remanding finding there was evidence the termination decision relied on false reports of misconduct). The new superintendent terminated Forbes by text. The new superintendent may have been the decision maker, but that is not alleged. Moreover, there is no allegation that Olsen provided false information or otherwise exerted influence over the superintendent or a decision maker. Accordingly, Counts II and VI fail to state a claim and are due to be dismissed.

**D. Retaliatory Hostile Work Environment (Counts III and VII)**

Title VII prohibits retaliation against an employee "because he has opposed any . . . unlawful employment practice." 42 U.S.C. § 2000e-3(a). For a retaliatory hostile work environment claim, Forbes must plausibly plead (1) he engaged in

protected activity, (2) was subjected to a hostile work environment, and (3) the two are causally connected. See Buckley v. Sec'y of Army, 97 F.4th 784, 799 (11th Cir. 2024). Youngquist disputes the causal connection. Doc. 12 at 13.

Here, Forbes has a timing problem because he argues the retaliation was a hostile work environment. As alleged, the hostile work environment is based on Olsen's harassment which started before Forbes complained. Any alleged adverse action before protected activity is not causally connected as a matter of law. Debe v. State Farm Mut. Auto. Ins. Co., 860 Fed. App'x 637, 641 (11th Cir. 2021) ("[I]f the alleged retaliatory conduct occurred before the employee engaged in protected activity, the two events cannot be causally connected.").[5] Similarly, activities that occurred both before and after protected activity, lack a causal connection to the protected activity (although changes in frequency or severity might indicate a causal connection). See Edgerton v. City of Plantation, 682 Fed. App'x 748, 750-51 (11th Cir. 2017). The complaint alleges similar harassment before and after Forbes reported Olsen to his supervisors. These allegations do not support a claim of retaliatory hostile work environment. Accordingly, Counts III and VII fail to state a claim and are due to be dismissed.

---

[5] The Court does not rely on unpublished opinions as binding precedent, however, they may be cited when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022).

**E. Retaliation (Counts IV and VIII)**

Counts IV and VIII are also retaliation claims, requiring protected activity and a causally connected adverse action. These claims, however, are based on the termination and alleged demotion as the causally connected adverse actions. Youngquist challenges the causal connection.

Close temporal proximity between the protected activity and adverse employment action may show relatedness. Shannon v. Bellsouth Telecomm., Inc., 292 F.3d 712, 716 (11th Cir. 2002) (citation omitted). Here, the alleged demotion and termination all occurred within a month after Olsen started working in Jacksonville. The alleged demotion was a few days after Forbes reported Olsen's prior behavior to the new superintendent. Forbes complained again about Olsen. Then Olsen assaulted Forbes. Forbes was terminated the next day. Temporal proximity sufficiently supports a causal connection. The motion to dismiss is denied as to Counts IV and VIII.

**F. Vicarious Liability (Count X)**

Forbes alleges Youngquist is vicariously liable for Olsen's alleged battery. When exercising supplemental jurisdiction over state claims, the Court must apply the applicable state law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79 (1938) (holding that except in matters governed by the Federal Constitution or Congress, the law of the state must be applied).

Employers are vicariously liable for an employee's intentional act when the

wrongful act is within the employee's scope of authority. See Weiss v. Jacobson, 62 So. 2d 904, 906 (Fla. 1953).

> Under Florida law, scope of employment is determined according to a three-part test: An employee's conduct is within the scope of his employment only if it is the kind he is employed to perform, it occurs substantially within the time and space limits of the employment and it was activated at least in part by a purpose to serve the master.

Lawrence v. Dunbar, 919 F.2d 1525, 1528 (11th Cir. 1990) (citation modified). Youngquist argues Forbes has not stated a claim for vicarious liability for the alleged assault because the alleged assault was not within Olsen's authority as its employee and was not done to further its interests. Doc. 12 at 16–17.

The alleged assault occurred at a company job site and on work time. Forbes alleges "Olsen was acting within the scope of his authority as a superintendent when he committed" the alleged assault. Doc. 1 ¶ 127. Drawing inferences in favor of the plaintiff, the Court finds that Forbes has stated a claim for Youngquist to be vicariously liable for Olsen's assault. The motion as to Count X is due to be denied.

**G. Attorney's Fees (within Count IX)**

Olsen disputes Forbes' claim for attorney's fees.[6] Doc. 15. The Court agrees attorney's fees are improper under state law. Florida follows the "American rule," where parties are responsible for their own attorney's fees, unless stipulated

---

[6] Forbes has not filed a response to this motion. However, there is no real basis for opposition.

otherwise by contract, agreement, or statute. Price v. Tyler, 890 So. 2d 246, 250 (Fla. 2004) (internal citation omitted). Florida's felony battery statute does not mention attorney's fees. See Fla. Stat. § 784.03 (2026). The Parties have not cited any contract provision or agreement regarding attorney's fees. The claim for attorney's fees in Count IX is due to be stricken.

Accordingly, it is now

**ORDERED:**

1. Defendant Youngquist Brothers, LLC's Motion to Dismiss Complaint (Doc. 12) is **GRANTED in part** and **DENIED in part.** Counts II, III, VI, and VII are **dismissed without prejudice**. The motion to dismiss is **DENIED** as to Counts I, IV, V, VIII, and X.
2. Defendant Shane Olsen's Motion to Dismiss and/or Strike Plaintiff's Claim for Attorney's Fees (Doc. 15) is **GRANTED.**
3. No later than **November 10, 2026,** the Plaintiff may file an amended complaint or stand on the remaining counts in the current complaint. Plaintiff should only replead the Counts on which there is a good faith basis to proceed, and the amended complaint shall not include a request for attorney's fees in a claim for battery against Olsen. Rather than move to dismiss again, Defendants should include any arguments against an amended complaint in a motion for summary judgment. Thus, Defendants shall answer no later than **December 10, 2026**.

4. The Court will shortly issue a case management scheduling order.

**DONE AND ORDERED** in Jacksonville, Florida this 13th day of October, 2026.

Timothy J. Corrigan
TIMOTHY J. CORRIGAN
Senior United States District Judge

ddw/hmp
Copies:

Counsel of record